34 C.C.P.A.(Patents)

### MANTZ v. CYR.

#### Patent Appeals No. 5262.

Court of Customs and Patent Appeals. Feb. 11, 1947.

Brown, Jackson, Boettcher & Dienner, of Washington, D. C. (Charles V. Hildebrecht, of Washington, D. C., of counsel), for appellant.

George H. Fisher, of Minneapolis, Minn. (Frederick E. Lange, of Minneapolis, Minn. of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding involving a patent of appellant No. 2,340,197, dated January 25, 1944, on an application Serial No. 394,601 filed May 22, 1941, and an application of appellee Serial No. 390,571, dated April 26, 1941. Appellee is, therefore, the senior party.

The patent of appellant is aasigned to Milwaukee Gas Specialty Company of Milwaukee, Wisconsin, and the application of appellee is assigned to Minneapolis-Honeywell Regulator Company of Minneapolis, Minnesota. The counts are claims 1 and 2 of appellant's patent and were copied by appellee after that patent issued. The counts read as follows:

"1. In combination, a supporting structure, a switch fixedly mounted on said structure provided with a controlling member having an "on" position and an "off" position, a reset member mounted on said structure for rectilinear movement to reset and released positions, an actuator member mounted on said structure for rectilinear movement to resetting and released positions and cooperable with said reset member, when same is in released position, to reset said reset member to reset position by movement of said actuator member from released position to reset position, said reset member and said actuator member being substantially coaxial, means for holding said reset member in reset position, and an operating arm for actuating said controlling member to 'on' position by cooperation of said actuator member therewith upon movement of said actuator member from resetting position to released position and only

when said reset member is held in reset position.

"2. In a switch of the class described, in combination, a supporting structure, a reset member mounted on said structure for rectilinear movement to reset and released positions, and actuator member mounted on said structure for rectilinear movement to resetting and released positions and cooperable with said reset member, when same is in released position, to reset said reset member to reset position by the movement of said actuator member from released position to reset position, said reset member and said actuator member being substantially coaxial, means for holding said reset member in reset position, switch means fixedly mounted on said structure, and a switch operating member actuated to position closing said switch means by cooperation with said actuator member upon movement of said actuator member from resetting position to released position only when said reset member is held in reset position."

The subject matter of the interference relates to an electric switch in a thermocouple safety shut-off device used in gas burners. The thermocouple is put into action by heat such as produced by a pilot flame thereon and the purpose of the device is for the maintenance of proper flow of the fuel to the main burner. When the pilot flame is extinguished the device shuts off the flow of fuel.

It will be noted that the counts relate to the structure of the switch.

During the motion period appellant moved to dissolve the interference on the ground that appellee had not disclosed the subject matter of the counts. The motion was denied by the Primary Examiner. Appellant waived his right to take testimony and requested that the case be set down for final hearing on the sole issue of appellee's right to make the counts. That, therefore, was the only issue before the Board of Interference Examiners of the United States Patent Office. The board awarded priority of invention on both counts to the appellee. From such ruling this appeal was taken.

Appellee relies upon the embodiment shown in Figures 5 and 6 of his application as supporting the counts. In order that the subject matter out of which the issue arises

may be clear we deem it advisable to reproduce those two figures.

Fig. 5

Fig. 6

Figure 5 shows a front elevation of the switch device depicting the position of the elements thereof when it is in closed position. Figure 6 shows the position of the elements when the switch is open. A housing 28 encloses an electromagnet structure with an armature. The numerals 118 and 119 designate the switch contacts. A biased or spring-pressed toggle link is indicated by the numeral 121 and an actuating lever by 122. Numeral 123 is a button which engages the lever 122. When the button is moved to the left, the lever 122 is pushed against the bias link 121 and the contacts 118 and 119 separate from the circuit with a snap action. Slidably extending through a slot in the top flange 14 is a forked member 147. Numeral 33 indicates a plunger which contacts the armature of the electromagnet. Slidable in slot 149 is a cross-head 150 pivotally secured to which is the lower end of lever 151 which has a downwardly extending arm 152 whereon appears the words "OFF" and "ON." The lever 152 is pivotally secured to the junction of the two legs of lever 151. Lever 151 bears against the button 123. At its upper end lever 152 is provided with ears 153 pivotally connected to slidable member 147 at 154. A spring 156 at its upper end is secured to ear 157 and at its lower end fastened near the bottom of 147. In its upward movement the member 147 is limited by a cotter pin 158.

Figure 5 depicts the switch with the armature in closed position on the electromagnet legs so that the cross-head 150 is down. While in this position the levers 151 and 152 are so angled that the button 123 is free to move to the right so as to permit engagement of the contacts 118 and 119. Should the pilot flame be extinguished, the electromagnet is deenergized and the armature released. Then the spring 38 moves the cross-head 150 upwardly to its top position with the levers 150 and 152 at right angles to each other. Lever 152 is urged against button 123 pushing it to the left and breaking the circuit at contacts 118 and 119.

It will be understood that when the switch is in the position as shown in Figure 6 the fuel feed valve is closed and when it is desired to open the valve the member 147 is pushed downwardly so that the spring 38 surrounding the reset member 33 is com-

pressed and the reset member pushes the armature against the legs of the electromagnet frame. Then if the thermocouple is heated by the pilot flame the armature is held by the energized electromagnet frame and the member 147 may be moved upwardly resulting in the position shown in Figure 5.

It is stated in the decision of the board that appellant admitted in his brief there is no ambiguity in the counts and, therefore, the language thereof must be read broadly. In his brief on appeal appellant makes the same admission but contends that the counts contain express limitations which may not be disregarded. The limitations appear in the latter part of each of the counts and read as follows: In count 1 "* * * an operating arm for actuating said controlling member to 'on' position by cooperation of said actuator member therewith upon movement of said actuator member from resetting position to released position and only when said reset member is held in reset position,", in count 2, "* * * and a switch operating member actuated to position closing said switch means by cooperation with said actuator member upon movement of said actuator member from resetting position to released position only when said reset member is held in reset position."

The board, reading the language of the counts broadly, pointed out that member 123 is the controlling member constantly pressed against the arm or lever 152 by spring pressure of the switch and that it cannot move to the "on" position until the lever 152 is pivoted to the left thus permitting the controlling member 123 to move to the right. The movement of lever 152 depends upon the movement of members 147 and 33. The board held it could properly be said that the member 123 is actuated to the "on" position through cooperation of the actuator member 147 with the operating arm 152 as called for by the counts. The board then stated that count 2 being similar to count 1, the same reasoning applies to both.

Appellee contended before the board that appellant had shifted his position from that urged before the Primary Examiner and for that reason appellant's argument should not be considered citing Koch v. Liebeer, Deceased, 141 F.2d 518, 31 C.C.P.A., Pat-

ents, 979. The board seemingly agreed with appellee's contention but stated it was preferable to dispose of the case on its merits.

■ Reading the language of the counts broadly, as we must do in this instance, the decision of the board appears to be proper. The devices of the parties appear to be similar with a few of the elements differing somewhat in form and juxtaposition.

As to count 1 appellee, in the switch casing 11, discloses "a supporting structure"; switch 116 depicts "a switch fixedly mounted on said structure"; element 123, the push button, is the controlling member shown in its "on" position in Figure 5 and its "off" position in Figure 6; stem member 33 is the reset member for rectilinear movement to reset and released positions required by the count. Member 147 is the actuator which, when moved downwardly, pushes the reset member 33 from its released position to the reset position shown in Figure 5 and thus reads on that portion of the count defining " * * * an actuator member mounted on said structure for rectilinear movement to resetting and released positions and cooperable with said reset member, when same is in released position, to reset said reset member to reset position by the movement of said actuator member from released position to reset position, * * *."

It is obvious that the reset member 33 and actuator member 147 are coaxial and also that the means for holding the said reset member is the electromagnet in housing 28. Considering the lever 152 as an operating arm it actuates the controlling member 123 to its "on" position because of cooperation of the actuator 147 with lever 152 when the operating arm is moved from reset to released position and this can only occur when the electromagnet is functioning, which means that the reset member 33 is held in its lowest position. Therefore, it appears to us, reading the language of the count broadly, that the switch disclosed by appellee reads properly on count 1.

With respect to the quoted clause of count 2, the "switch operating member" therein may, in our opinion, be properly considered the lever 152 which is "actuated" as above described to an "on" position as shown in Figure 5 and, therefore, to a "position closing said switch means." There is no doubt that member 152 is moved by a cooperation with the actuator member 147 when the latter is moved from a resetting to a released position with the reset member 33 held in reset position by reason of the energizing of the electromagnet.

It is true that the member 123 is constantly pressed against the lever 152 by spring pressure of the switch; however, reading the language of the counts broadly member 123 cannot move to an "on" position until the lever 152 is so moved as to permit movement of member 123. Member 123, however, is controlled in its movement by the actuating and reset members and, therefore, member 123 was properly considered to be actuated to its "on" position by reason of the cooperation of actuator member 147 with the operating arm 152.

■■ Since it is admitted by appellant that there is no ambiguity in the counts, it is not necessary to read them on his device and since in our opinion Figures 5 and 6 of appellee's structure, when broadly read, meet the limitations thereof, the decision of the board should be and is affirmed.

Affirmed.